And we'll hear argument in the next matter, Lensky v. Turk Hava Yolari, 21-2567. Thank you. Good morning. Good morning, Your Honors. My name is Will Woodrow. I represent plaintiff appellants and their claim against Turkish Airlines, Inc. The issue is personal jurisdiction over foreign air carriers for claims under the Montreal Convention. Counsel, assuming what the plaintiffs say is true, that they were treated really badly, where can they sue? Well... I suppose they could go to Turkey and sue there, right? If the trend in district court decisions holds true, then yes, out of the five jurisdictional bases that they're granted under the Montreal Convention, the only place left of them is to go to Turkey and sue there. Of course, you might not be surprised that they doubt that they'd get a fair hearing in Turkey, considering the way they were treated by the police and by the airline and everyone else. So maybe they don't see that as a very welcoming forum. Correct. And they also would not have the funds to even begin to prosecute their claim there. Continue. So for nearly 100 years, foreign airlines have submitted to the jurisdiction of U.S. courts under first the Warsaw Convention and then the Montreal Convention. But as I said, these recent years have seen a string of district court decisions saying that the Montreal Convention only converts subject matter jurisdiction. Which you accept, right? I do not accept that. Absolutely not. Let's try to get that. It's sloppy. It was sloppy reasoning. And it worked pre-Daimler because courts holding on to personal jurisdiction, if somebody went to Kansas and they wanted to sue the airline, the court would say, no, you flew from New York, you don't have personal jurisdiction here. What they should have done is transferred under venue statutes, because the clear intent of those who passed the treaty, of the president, the negotiators, the Senate, was that if treaty jurisdiction is established, then at a nation-state level you have absolute jurisdiction. And I said it extensively in my briefing. When you say absolute jurisdiction, absolute what sort of jurisdiction? Absolute personal jurisdiction? Yes, at a nation-state level. And if you go back to the minutes of the convention where the delegates negotiated Montreal, you can see that they were very concerned with issues of minimum contacts, fundamental fairness. This constituted substantial protections for small carriers. Not only did air carriers have to have either their code or their aircraft touch a state, they also had to have a place of business in the state. So these delegates, they were very concerned with due process. And the problem that some of these district courts did is they went and they looked for the words personal jurisdiction in the treaty, and they didn't find it. But that's a U.S.-centric concept. Are the words subject matter jurisdiction in the treaty? No. It just says jurisdiction. It just says jurisdiction, yes. And so clearly due process. I'm calling it legislative history, but, you know, the explanations. They use language that is traditionally personal jurisdiction concepts. Minimum contacts, right? Minimum contacts, fundamental fairness. Yes. And so it would be – If you are correct, then THY could be sued by anyone in New York who buys a ticket to fly on THY. Pretty much. If an accident, as defined by the Montreal Convention, occurs on a flight, then yes. If Montreal Treaty jurisdiction is established, then yes. And now that's not to say just because – Why is that correct? That's correct because that is the clear intent of the negotiators of the Treaty of President Clinton when he transmitted the treaty to the Senate for ratification of Chairman Lugar. When he sent it out of the subcommittee to the full Senate for ratification, it was clearly their understanding that they had won protection with this new Montreal – Article 33.2 added a jurisdictional basis. There were four under Warsaw. The fifth jurisdictional basis. The fifth jurisdiction. And so this would say if there were – So we have a precedent data that says that Article 28 of Warsaw speaks to subject matter jurisdiction, which suggests that the new provision was that 33 is also subject matter jurisdiction. If you go to this very court, Your Honor, that's not accurate. There are conflicting opinions. When you say this very court, I'm sorry. The Second Circuit. The Second Circuit, okay. If you go to Mertens v. Flying Tiger Line or Smith v. Canadian Pacific Airways, Smith says, Nowhere in the discussions does a concept so local as venue appear, and we have no indication that the drafters of Article 28 were concerned about or indeed even familiar with the American court system and its conceptions of jurisdiction and venue. That doesn't really help you. Well, what they're saying, Your Honor, is basically what I am saying, is that the treaty was negotiated at the level of nation state. They didn't care about – they said once you have – once your state – Sure. But to say that doesn't necessarily help us distinguish between or determine whether it's a matter of subject matter jurisdiction, so at the nation state level, or a matter of personal jurisdiction at the nation state level. And those are two extremely different distinct concepts. Your Honor, I think it's both. And I think you can tell that they both were contemplated in the language of the treaty negotiation and of the concerns of the delegates about fundamental fairness, about minimum contacts. There was nothing held in reservation that we'll submit to treaty jurisdiction, but, caveat, maybe we will get out still. And the problem is what's happened now is post-Daimler is there's nowhere in the United States for a Montreal claim to be brought because general jurisdiction used to be so easy to attain, but now it's not. So how is it that a treaty or a federal statute can supplant the constitutional analysis that we're asked to undertake post-Daimler, post-Ford? Well, Your Honor, foreign selection – sophisticated business parties, they engage in foreign selection clauses all day long. And it would be truly peculiar if sophisticated states could not engage in the same process. And I would submit that they have. And to not recognize as such is essentially to nullify the treaty for thousands of passengers who travel every day. But in my last few seconds here, I would point out as well that there is a less dramatic approach, and that is under the recent Supreme Court precedent that the district court did not have the advantage of in Ford Motor Company, the court, as I'm sure you're aware, focused on the back half of the standard, which says relates to. And it would be – Could I ask another question as you're running out of time, with the permission of the presider? The fact that there's a subsidiary with offices in New York, I mean, but you haven't made like a piercing to corporate veil type argument. Why doesn't the existence of the subsidiary result in personal jurisdiction over the parent? Does it? Does it not? We made that argument, and it was rejected at the district court level, and we haven't raised it again because we wanted to just keep a clean approach of first specific jurisdiction through Ford and relates to and looking at it would be truly strange if an airline said. The injury here occurred in Turkey. The injury in Ford occurs in those states at issue. Is that not a relevant distinction? I don't believe it is because it occurred between the process of embarking and disembarking, and that triggers Montreal jurisdiction. But insofar as you're relying on Ford, isn't that a relevant distinction? No, I don't think it is, Your Honor, because every activity that Turkish Airlines engages in in New York, selling, marketing, tickets, employees, their entire business is geared towards taking passengers on flights and bringing them home on flights and protecting them in the interim as their duty as a common carrier is heightened. And these people stood by and they watched this. Are you making, as a separate but somewhat related issue to what we've already discussed, a consent-based argument? In other words, that the appellee here has effectively consented to jurisdiction or not? Well, I wasn't specifically making that, but I would say that by virtue of doing business and availing itself of New York and the ability to make a lot of money in New York, that yes, to some great degree, they do. Implied consent, at a minimum, is what you're saying. Right. Counsel, would your argument on the Montreal Convention be the same if the assault on these flighters took place on the plane and not on the jetway? Is that an important fact? It would be the same, yes, because it's still between embarking and disembarking. So we draw no information from the fact that they hadn't gotten on the plane yet? There's a lot of case law that deals with what is embarking and what is disembarking. Is it a moving escalator traversing the airport? Is it getting arrested? That, I would say, is probably going to be an argument that we will have down at the district court level. But for purposes of my argument, I'm not drawing a distinction. Did the airline make any offer of compensation to these plaintiffs, at least for the price of the ticket? No. Never? Well, they gave them business class. They gave them business class, yes. They flew them home on business class. That was it. Did they fly them free back to New York, ultimately? No. I mean, they didn't make them pay for the business class upgrade. It was the upgrade that they got. All right. Well, you've reserved some time for rebuttal. Thank you, Your Honor. We'll hear from Mr. Carlson. Good morning. May it please the Court. My name is Chris Carlson, and I represent the defendant, Turkish Airlines. Before I get into comment on the arguments that were made on the Montreal Convention, Judge, I would just like to point out your comment about the subsidiary in New York. It comes up in these cases, Turkish Airlines cases, all the time. Turk Havayollari is the national carrier of Turkey. There's no question about that. Turkish Airlines, Inc. is a paper corporation. It's a what? I'm sorry? It's a paper corporation. Yes. It has no employees. It has no assets. It doesn't do any business. It was incorporated for reasons I don't understand about 20 years ago, and it's never done anything, and it's been sitting on the books. It's not an airline. I don't recall any argument. It's causing some trouble, potentially. Well, I'm trying to get them to dissolve it. There is an office in New York where the employees sell tickets to fly Turkish Air. For the airline, not Turkish Airlines, Inc. Who pays for those employees? Turkish Airlines, Inc. has no employees. Turk Havayollari, the Turkish corporation, employs all of the people who work in the United States. Turkish Airlines, Inc., the New York corporation, has no employees. THY. Correct. So THY actually pays for the employees who are in New York selling the tickets? Sure. It's like British Airways. That's the operating company, and it's – okay. Yeah. The New York corporation has nothing to do with it. And, in fact, in this case, my recollection is when I pointed it out to plaintiff's counsel, they then changed the allegations and the complaint. It gets confusing because – To THY. Now, the airline operates under the trade name Turkish Airlines, and now we've got this New York corporation, but they're completely separate entities. Okay. But getting back to the arguments dealing with the Montreal Convention, there is no – To me, the big picture is this. The residents of New York, they buy tickets in New York to fly on Turkish Airlines from New York and then back to New York. Turkish Airlines is flying regularly to and from New York. I have a hard time understanding why there isn't personal jurisdiction over Turkish Airlines. Because with respect to the claim involved in this case, it has to arise – it's got to have some connection to New York. And there was absolutely – the case was – Why isn't there a connection to New York that they are flying – they're about to fly back to New York. They wouldn't have been there without buying the ticket in New York. Well, that's correct, Judge. They would not be in the Istanbul Airport if they were not intending to come back. But that doesn't mean that anything that happens from the time that they leave New York until they start to fly back to New York is covered by the convention. There's got to be some – What is the purpose of the convention? My understanding is that the revision from the Warsaw Convention to the Montreal Convention was designed, really in large part, to protect American passengers wherever they are. Is that an erroneous understanding? Well, it is and it's not, Your Honor. Clearly, when the Warsaw Convention started, it was drafted in 1929, the primary concern back then of all the countries that negotiated it was having uniform laws and limiting liability because the airline industry was in its infancy, and if they had a crash, they'd wipe it out, and it was just something they wanted to foster. With respect to subject matter jurisdiction, the Article 28 of the Warsaw Convention, the reason that it was put in the convention, and it's in the minutes, is that they were concerned back then that flights, international flights, flying over a vast number of countries, many of them might not have developed court systems, and they did not want to have cases brought in those countries with very underdeveloped court systems. So what they did is they picked the four places for subject matter jurisdiction, which were in Article 28, because they had – logically would have the most contact or connection with the service being provided, and because of generally only developed countries at that time had airlines. So the place where you bought the ticket, where you were going, where you were coming back from, or the domicile, those were the four subject matter jurisdictions. Now, I would point out – Here, place where you bought the ticket. So under the Warsaw Convention, Article 28. Correct. Those four were then adopted into Montreal, except that when Montreal was being negotiated, the United States is the one that pushed for the fifth jurisdiction, because they said basically we want our citizens in an appropriate case to have subject matter jurisdiction over their claims in the United States. And basically the United States said if we don't have this, we may pull out of the convention. And in the minutes that talk about that, adding the fifth provision, there is discussion of minimum contacts, fundamental fairness. Aren't those personal jurisdictions? Well, but it's not within the realm of personal jurisdiction. What they said was, okay, we want to give our U.S. citizens the option of suing in the United States, provided there's some – you satisfy two elements. One is that's the principal residence of the passenger, and two, it's got to be a place from which the airline operates its flights. But it is clear – Both of those exist in this case. One and two, they exist in this case. Right, for subject matter jurisdiction. But then you still – all of the case law is clear that subject matter jurisdiction and personal jurisdiction are different animals. To ask Judge Pooler's question, would it have made a difference if the injury had taken place on the plane during the flight? It probably would. And why would it make a difference? Well, because it would have a connection – it would have a closer connection to New York and the operation of the flight. You mean if they were headed back? I'm sorry? If they were headed back to New York? Right, and they would be on the flight and the airline would be in control. This was an assault committed by the Turkish police. It's significant. These people walked up – But the airline's personnel were intimately involved in the alleged assault. Well, I don't agree, but I know – I mean, that's a fact of the question. We assume that's true for now. Sure, sure. But what happened is clear from the complaint, is that they claim they came up, they tried to get on, and for some reason they were denied. Then the plane left. They took pictures of the plane leaving. It's in the complaint. It was over. The plane was gone. And then sometime later, we don't know how long, the Turkish police come up because they refused to leave the jet bridge. This was no different than if they showed up and the plane was already taken off and they ran up to the jet bridge and said, I'm here, and they said, sorry, you can't get on. So any connection to the flight had been broken at that time. And not even a careful, a base reading of the complaint, is that the reason they were assaulted, because the police said, we want you to delete that photo. And they said no. And that's when the assaults started. So they're simply – But they made that request at the request of the airline's personnel. That's the allegation. That's the allegation of the complaint, yes. Why would the U.S. government, the executive and the legislature, go through all of these machinations in connection with revising the Warsaw Convention and agreeing to the Montreal Treaty in the way that you described to protect American passengers, just to make it clear or to clarify that subject matter jurisdiction is in the U.S., when based on what you told us by way of the history of the Warsaw Treaty, there was already subject matter jurisdiction in the U.S.? Why can't we see this change as one where they are actually trying to clarify to include personal jurisdiction? There may be other issues, but I'm interested in this view of the Montreal Convention as limited to subject matter jurisdiction and not otherwise referring to personal jurisdiction. Well, there were a number of changes made. By and large, the Montreal Convention is an extension of the Warsaw Convention. There were a number of changes made. The overall sort of describing it in literature, it's more passenger-friendly. So, for example, the provisions dealing with limitation of liability have been softened and they help the passengers out more. But if you just look at the structure of Article 33 of the Montreal Convention clearly follows from Article 28. But Article 33.2 is the new language. Is that right? Right. So 33.1 takes the four original subject matter jurisdiction places. 33.2 extends that to the fifth jurisdiction. It would make absolutely no sense for them to say, we've got four places of subject matter jurisdiction. We're going to extend it to a fifth jurisdiction. But with respect to that one, we're talking about personal jurisdiction. Why do you say it would make absolutely no sense? Because all of the language is the same. They put it into a different subdivision. If it was all the same, they would have kept it in one. No, Judge. The reason it's in a different subdivision is Article 1, 33.1, deals with all kinds of claims, baggage, cargo, personal injury, death. Article 33.2 is specific to personal injury and death. So that's the reason they separated it out, because it was limited to only certain kinds of claims. And I would also point out that at the time that Montreal was being negotiated— Is it not plausible that they separated it out because it was going to something different that is personal jurisdiction? But they would have said that in the minutes, in the drafting history. And I would point out, in fact, there has not been any decision out of this Court on the personal jurisdiction issue. But certainly under the Warsaw Convention, this Court of the Second Circuit, in the guide of the Lot Polish Airlines case in 1982, which I've cited in my brief, said that Article 28 speaks to subject matter jurisdiction, period, full stop. There just is no rational basis to say, under all the circumstances— The crux of your argument is that 33.2 must be a subject matter jurisdiction, because we've not dealt with this issue. But it must be a subject matter jurisdiction provision, because otherwise it wouldn't make sense. We've got to view it in light of 33.1, which we've described as subject matter jurisdiction provisions. Right. And then also 33, I believe it's 4, says that once you establish subject matter jurisdiction, questions of procedure are governed by the law of the court sees of the case. So Article 33, like 28, tells you what country you can get into for subject matter jurisdiction purposes. Once you're in that country, you still have to satisfy the internal laws, procedural laws, including personal jurisdiction. So you heard me ask opposing counsel about these plaintiffs bringing suit in Turkey. They could do that, right? They could sue in Turkey, yes. Of course, it would be a very inconvenient forum, wouldn't it? It might be inconvenient, Your Honor, but that's a different question than personal jurisdiction. Well, once they achieve personal jurisdiction by suing this company in Turkey, couldn't they move to change the forum because it's so inconvenient? I hadn't thought about that, Your Honor, but I'm not aware. I've never come across a situation where you use a forum nonconvenience dismissal to put a case somewhere where you couldn't get personal jurisdiction. Although it's creative, isn't it? I'm sorry, Judge? It's creative, though. Yeah, it is. So let me ask you just a point that I think may be helpful, maybe not. Are the terms of the convention incorporated into the contract between THY and passengers? They generally are put into the conditions of contract. I know this is a complaint, but they generally are. There wouldn't be a reason not to incorporate them. Yeah, for example, every airline has conditions of carriage, and it sets forth the damages you're entitled to for damage to baggage. It's based on a certain SDR limit per passenger. Those things are incorporated into the conditions of carriage, and they are in THYs. You also heard my question to your friend about consent and a consent-based argument. Can you address that briefly? Well, if there was something that said by flying here you agreed to personal jurisdiction, I would agree, but it's not there. Going back, it's a subject matter jurisdiction issue, and as you asked that question, I was— The implied consent argument that they're selling tickets or doing business here. Why isn't that implied consent? Because they've impliedly consented to subject matter jurisdiction, not personal. I mean, that's like if we take—let's say this happened at the—these people were just sitting— It's kind of odd to consent to subject matter jurisdiction without consenting to personal jurisdiction. Well, I guess we can't— What is the point of consenting to subject matter jurisdiction if there's no personal jurisdiction? And in any event, I'm not sure you can consent to subject matter jurisdiction. Well, I agree that you can't. But as I was sitting here, I haven't thought this thing through, but when you asked the question, it's sort of like—I know there are cases fairly recently dealing with the requirement in New York State that companies register to do business, out-of-state companies, and the argument was made, and it was rejected, that by filing your authority to conduct business in New York, you are impliedly consented to personal jurisdiction here. And I'm fairly certain that all the courts that have looked at that said no, because you don't have a choice. You're not consenting to anything. So if there were an implied consent to personal jurisdiction, it would have to be— 90 years of jurisprudence saying the convention, both Montreal and Warsaw, only deal with subject matter jurisdiction, and there would be no basis to make that leap. Explain to me again how this protects American passengers, how your position— For the limited purpose of— And the result here is that American passengers are in Turkey, but they bought an airline ticket. They got an upgrade apparently as a result of all this, but they bought an airline ticket in New York. And let's just assume—I know that this will be disputed or not, depending—that they were injured in Turkey. And I've got a convention. We've got a convention. You've got a convention that says the reason that the United States signed off on this treaty was to protect American passengers with its fifth jurisdiction. Well, it made it more passenger-friendly, and there were a number of provisions that they modified. One of the provisions they modified was the subject matter jurisdiction provision, and they did make it more passenger-friendly because it made it easier or it provided an additional ground, the fifth jurisdiction, in an appropriate case for an American passenger to be able to sue here. So, for example, the factual scenario that this came up when Montreal was being discussed is if I flew from—round trip, I bought tickets to New York and London and back. While I was in London on vacation, I decided I want to take a side trip and completely unconnected to my New York travel, and I buy a ticket on British Airways and I go, let's say, to Istanbul and back again, and I'm injured. In that situation, none of the four, the original four subject matter jurisdiction bases would allow subject matter jurisdiction in the United States. But the government said, the U.S. government said, if we've got a U.S. passenger who does that and VA has operations in the United States in New York, we're going to allow subject matter jurisdiction under the fifth jurisdiction. That's the factual scenario that the fifth jurisdiction was enacted to address. And it simply is, to me, incomprehensible that given all the case law, the history, all the smart people in the government who were negotiating the fifth jurisdiction, that no one anywhere ever said, this is personal jurisdiction. Thank you. We'll hear from Robert. Thank you, Your Honor. Well, to his last, I would say that's not surprising because personal jurisdiction is a U.S. term, and we don't see the Canadians getting words, or the New Zealanders getting words of fundamental justice written into the treaty. And that might be a term that they use that encapsulates some of what we do with personal jurisdiction. But clearly due process was being negotiated. And as to his last illustration, well, thanks for nothing, because under his formulation, subject matter jurisdiction means nothing if you can never get personal jurisdiction. Now, he said, well, if they were on the plane, maybe that would make a difference. Maybe he's making a concession under Ford, but he's not making a concession under Montreal. Because under Montreal, Turkish Airlines will only ever be sued in Turkey because it's the principal place of business and it's their place of incorporation. The other three jurisdictional bases cease to apply entirely. And that can't be what the treaty negotiators meant when they negotiated the treaty. Yes, questions of procedures are left to the courts, but questions of procedures can't operate so as to push the treaty back off the nation's shores. That clearly goes against the words of the President. When he submitted to the Senate, he said, Why do you say that the expansion of subject matter jurisdiction to the U.S. or to parts of the U.S. in the way that your friend described isn't a significant advancement of an American interest? Because it means nothing if the court, if the Supreme Court, if the carriers still don't have to show up. If there's no way to get personal jurisdiction over any of those areas. In a specific case, but what it allows is for an American plaintiff passenger to then have an opportunity in a court to show that personal jurisdiction exists. There is a balance, right, here? It's not entirely passenger-friendly. The carriers have some interests. If it was a domestic carrier, sure. But as far as foreign air carriers go, there's no way to demonstrate personal jurisdiction because the only two bases under the treaty that would ever be satisfied would be place of incorporation or principal place of business. Yeah, but I think there was a, maybe as you put it, a concession that if a passenger is injured in flight or if the injury relates directly to the underlying contract, then there would be personal jurisdiction here. So there are bases. You're telling me that it's impossible, and I'm pushing back on that. If the court adopts an expansive interpretation of Ford and says that specific jurisdiction does apply, then yes, we could go back to the pre-Daimler status quo. But I would still submit to you that the intent of those who ratify the treaty and the intent of Congress and the intent of the Senate, and there's plenty of Supreme Court cases that say treaties must be interpreted to give effect to the shared understanding and expectations of the contractor. Are treaties the same things as federal statutes for this purpose? For this purpose, absolutely they are. Where would I look to for that? Well, I would look to the Fifth Circuit. Well, I'd look to the committee notes, 1993 committee notes, where it says it uses the word any to modify federal law, and the Fifth Circuit and World Tanker Carriers, they interpreted the word any to strongly suggest that the advisory committee intended Rule 4K2 to reach not just federal question cases under 1331, so the Fifth Circuit is saying that's easy and treaties fall into that, but all claims arising under substantive federal law. And this court was ruling that 4K2 applied to cases brought in by an admiralty, and this court, the Second Circuit, has adopted that as well, and Purina v. Marwood Shipping, where it said the plaintiff's suit relies on general maritime law. Their claim, therefore, is one that arises under federal law for the purposes of Rule 4K2. And it would be very unusual if Congress had wanted to exclude treaties from federal law in that sense, and you would more expect that they would have explicitly said so. Thank you very much. More reserved decision?